HARRY SAWL vs. HELEN KWIATKOWSKI.

Hampden.    November 1, 1965. — December 7, 1965.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

Contract, For sale of real estate. Equity Jurisdiction, Specific perform-
ance.

The buyer under a contract for sale of real estate, even after a tender of
the full purchase price, was not entitled to a decree for specific per-
formance of the contract in a suit in equity against the seller where the
contract called for a conveyance of "a good and clear record and
marketable title . . . free from encumbrances" and provided that if the
seller should be unable to make such a conveyance the obligations of the
parties under the contract should terminate, and it appeared that at
the time the contract was made there was, unbeknown to the seller, a
potential succession tax lien on the property rendering the title un-
marketable and that the seller had never taken any steps to clear the
title of such encumbrance.

BILL IN EQUITY filed in the Superior Court on March 7,
1963.

The defendant appealed from a final decree entered by
Barron, J., after confirmation of a master's report.

Maurice J. Ferriter for the defendant.

Burton S. Resnic for the plaintiff.

CUTTER, J.   Sawl seeks specific performance of an agree-
ment for the sale for $100,000 by Mrs. Kwiatkowski (the
vendor) of real estate (the locus) in Holyoke, worth
$115,000.   The vendor gained title to the locus, formerly
held by her and her husband as tenants by the entirety,
upon his death in 1953.   Sawl paid a deposit of $5,000.   A
written agreement dated January 22, 1963, was prepared
by a broker.   Under this the vendor was to convey on
February 28, 1963, "a good and clear record and market-
able title . . . free from encumbrances."   The agreement
provided, "If the seller shall be unable to give title or to
make conveyance as above stipulated, any payments made
under this agreement shall be refunded, and all other obli-

gations of either party hereunto shall cease. The acceptance of a deed by the Buyer shall be deemed to be a full performance and discharge hereof.'' This provision, for convenience, is referred to as the ''termination clause.''[1] A master made findings on the basis of which the facts are stated.

The vendor on November 12, 1953, gave bond as administratrix of her late husband's estate. She did not include in the estate inventory the locus, subject at the time of death to a bank mortgage upon which between $30,000 and $55,000 was due. The Massachusetts Inheritance Tax Bureau was never notified of the husband's interest in the locus. The Commissioner of Corporations and Taxation had filed a statement (form L–10), that, from information then on file with him, there appeared to be no inheritance tax due. The master found (1) that ''there is at least a reasonable probability that'' an inheritance tax was in fact ''due . . . on account of the . . . [vendor's] acquisition of title as a surviving tenant by the entirety''; (2) that ''the probability of . . . a lien [for the tax] existed on February 28, 1963,'' and was ''sufficiently great to render the title non-marketable in the absence of . . . evidence that'' the locus ''is free of such lien''; (3) that a ''discharge of the potential inheritance tax lien was not available to the . . . [vendor] on the date . . . [set] for performance of the contract''; and (4) that when the vendor executed the agreement, ''she had no knowledge that the . . . [locus] might be subject to a tax lien; or that she might be liable for a tax as a surviving joint owner.'' Discharges of all other encumbrances were available to the vendor on the date set for performance. No steps had ever been taken by the vendor to report to the Inheritance Tax Bureau the fact of a potential tax, to determine its amount, or to obtain a discharge of the tax lien. The ven-

---

[1] The agreement also provided, ''The seller may use the purchase money or any portion thereof to clear or perfect his title; all instruments procured therefor to be recorded simultaneously with said deed. Either party may have thirty days extension to cure any defect found in title. Time is of the essence of this contract.''

dor's failure, at least prior to the contract, to notify the tax authorities "was not deliberate on her part, but . . . resulted from . . . lack of knowledge."

Sawl tendered payment of the full purchase price in cash. The vendor offered to return the deposit check. Each tender was refused.

The master's report was confirmed. A Superior Court judge ruled that the vendor had committed a breach of contract and that she "was at fault in failing to file" the necessary tax returns and to take steps to discharge the tax lien. A final decree ordered conveyance ten days after delivery to the vendor of an inheritance tax receipt.

The "termination clause" is almost precisely in the language of the similar provision discussed in *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, 272–274, where Chief Justice Rugg said (p. 273) that a contract containing such a provision "is not an absolute and unqualified agreement by the one party to sell and by the other to buy real estate with a good and sufficient title. It contains the stipulation quoted which governs the rights of the respective parties in the event that the defendants should be unable to give a good title. This clause means that if it turns out that without fault on the part of the defendants subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease. The language is plain and unequivocal. It does not make the duties and responsibilities of either party in that event depend upon the option of the other, but by apt language puts an end to the binding force of the contract as respects either party. Such a contract is not unreasonable, and it establishes important rights and duties. A land owner might be willing to sell only upon the assumption that his title was good, and prefer to keep it if any cloud upon it was disclosed, rather than to be at the expense of removing it, while a prospective purchaser might desire to agree to buy upon precisely these terms. If it had been the intention of the parties to make the obligation to convey or make good defects in title turn upon

any other event than the quality of the owner's title, it would have been simple to express it."

That decision has been followed in a long line of cases upon which property owners have relied. See cases cited in *Flier* v. *Rubin,* 321 Mass. 464, 466–467; *Lucier* v. *Williams,* 323 Mass. 458, 461–462 ("the seller . . . is protected by such a provision . . . except where he has impaired the title subsequent to the contract or has waived its provisions"); *Fisher* v. *Sneierson,* 330 Mass. 48, 50; *Barrett* v. *Carney,* 337 Mass. 466, 467–468. This line of authorities is distinguishable from cases dealing with contracts containing provisions expressly or by implication requiring affirmative action on the part of the seller to perfect the title which he had agreed to convey. Cf. *Widebeck* v. *Sullivan,* 327 Mass. 429, 432–433 ("Seller agrees to use reasonable efforts to remove any defect in title"). Cf. also *Stabile* v. *McCarthy,* 336 Mass. 399, 402–406 (special agreement by a buyer interpreted in context as requiring "reasonable efforts").

Here there was no "fault" on the part of the vendor as that term is used in cases like *Fisher* v. *Sneierson,* 330 Mass. 48, 50. The term, as is indicated by the language quoted above from *Lucier* v. *Williams,* 323 Mass. 458, 461–462, means conduct by the vendor subsequent to the purchase agreement and tending to impair the vendor's title. See *Oberg* v. *Burke,* 345 Mass. 596, 599. It does not include mere inaction concerning a then existing defect of which the vendor was not aware when the agreement was executed. Cf. *Lafond* v. *Frame,* 327 Mass. 364, 366–368 (where the mortgage relied upon as an encumbrance was known to the seller and had been placed by her). Cf. also *Moskow* v. *Burke,* 255 Mass. 563, 567 (seller, a second mortgagee in possession, intentionally placed foreclosure date after day fixed for performance of agreement to sell the mortgaged property); *Margolis* v. *Tarutz,* 265 Mass. 540, 543–544 (failure of seller to obtain release of curtesy by her husband, which she had impliedly undertaken to obtain). The vendor seems to have been subject to a duty to the

Commonwealth to report the tenancy by the entirety and to pay the tax, with the consequent removal of the tax lien. See G. L. (Ter. Ed.) c. 65, §§ 6, 22 (now amended by St. 1961, c. 469, § 1, and St. 1964, c. 470, § 2). See also c. 65, § 9, as amended through St. 1952, c. 445, § 1.[2] The purchase agreement, however, imposed upon her no such duty to Sawl.

The final decree is reversed with costs of appeal to the vendor. A new final decree is to be entered which is to direct that the bill be dismissed upon the refund of Sawl's deposit.

*So ordered.*

---

[2] See later amendments of which the more recent is in St. 1964, c. 470, § 1.