JON MARCIL vs. JOHN DEERE INDUSTRIAL EQUIPMENT
COMPANY & another.

Hampden.    February 13, 1980. — April 24, 1980.

Present: HALE, C.J., GRANT, & NOLAN, JJ.

*Negligence*, Manufacturer, Economic loss. *Sale*, Warranty. *Uniform Commercial Code*, Warranty, Privity of contract. *Pleading, Civil*, Motion to amend.

In an action against the manufacturer and distributor of a loader pur-
chased by the plaintiff for use in his excavation business, the judge
properly directed verdicts for the defendants on the plaintiff's claims
for breach of warranties of merchantability and fitness where the de-
fendants had expressly disclaimed such warranties. [628-629]
In an action against the manufacturer and distributor of a defective load-
er purchased by the plaintiff for use in his excavation business, the
judge properly directed verdicts for the defendants on the plaintiff's
negligence claim where the plaintiff failed to allege or show either per-
sonal injury or physical damage to property resulting from the defect;
the purchaser of a manufactured product who claims as damages only
economic loss or damage caused by the product to itself cannot main-
tain a claim for negligent design or manufacture. [629-632]
In an action against the manufacturer and distributor of a loader which
the plaintiff alleged was defectively designed, the judge did not abuse
his discretion in denying the plaintiff's motion to amend his complaint
in order to maintain it as a class action. [632-633]

CONTRACT AND TORT.    Writ in the Superior Court dated
February 26, 1973.
The action was tried before *Cross*, J.
*Louis Kerlinsky* for the plaintiff.
*Philip J. Callan, Jr.*, for John Deere Industrial Equip-
ment Company.

HALE, C.J.    The plaintiff appeals from judgments
entered following the allowance of motions by the defend-
ants John Deere Industrial Equipment Company (Industrial)
and John Deere Dubuque Works (Dubuque) for directed

verdicts on all counts against them, and from action taken on the plaintiff's motions to amend his complaint before the trial. The record before us contains some of the exhibits and designated portions of the transcript of the testimony. We summarize that evidence in the light most favorable to the plaintiff.

The plaintiff was self-employed in the excavation business in 1970 and was in the market for a loader for use in his business. A loader is a four-wheel vehicle with a front bucket used for digging, earth moving and loading. Various companies demonstrated their loaders to the plaintiff, and he went to Lomac Equipment Co., Inc. (Lomac),[1] to see the John Deere model 644 wheel loader. The plaintiff obtained a promotional brochure from Lomac. The brochure, which was introduced in evidence, contained general statements about the advantages of the John Deere construction equipment line and emphasized the desirable features of the model 644 loader.[2] The plaintiff purchased a model 644 wheel loader on December 21, 1970. On the face of the purchase order was the statement: "The Warranty on the reverse side is a part of the contract. Neither seller [Lomac], John Deere Industrial Equipment Company, nor the manufacturer makes any other representations or warranties, express or implied (AND EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS) or has any obligation to the Purchaser except as provided on the reverse side." The plaintiff's signature appears under the statement. The warranty on the reverse side was limited to a warranty by Industrial to

---

[1] Lomac was also a defendant but has not appealed from the judgments against it based on verdicts for the plaintiff in the amount of $25,350.

[2] Statements made in the brochure included: "Here's the power you need, the performance you've been looking for in a 4-wheel drive loader. From ripping up blacktop to handling sand and gravel, the JD644 power train is designed to move big loads and to move them quickly . . . . Other advantages, such as power steering, hydraulic wet-disk brakes, and a single-lever loader control, combine to give you more production and greater profits."

replace or repair parts defective in materials or workmanship for a period of twelve months or 1,500 hours of operation, whichever should first occur. The warranty stated: "Neither John Deere [Industrial] nor any company affiliated with it makes any warranties, representations, or promises, express or implied, as to the quality or performance of its products other than those set forth above and DOES NOT MAKE ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS." Lomac, Industrial and the latter's affiliates also disclaimed liability for incidental and consequential damages, including loss of profits, rental of substitute equipment or other commercial loss. The loader was designed and manufactured by Dubuque.

From the time of purchase until November, 1972, the plaintiff experienced no difficulty with the loader which was related in any way to any of the claims for which the plaintiff now seeks recovery. He used it without incident in accordance with the manual and operator's instructions for loading, excavation and snowplowing, giving it "very good care." In November, 1972, he began to experience difficulty with the valve that controlled the operation of the bucket. The valve was sticking, and the loader suffered a loss of the downward pressure needed for digging. At about that time, the valve exploded. The valve was removed and returned to Lomac for repair. When that failed to end the problem, the entire loader was returned to Lomac. Several attempts were made to repair it, but the problem continued. On January 3, 1973, Lomac disassembled the machine and found that there was "an imperfection on an expanded area" in the lower ends of the "boom cylinders." Lomac replaced the cylinders. During the period of repair, the plaintiff was unable to use the loader to perform work he had agreed to perform. He was billed by Lomac for the repair work done.

Answers to interrogatories filed by Industrial and Dubuque which were in evidence indicate that the boom cylinders used in the plaintiff's loader were later redesigned and replaced with cylinders with increased thickness at the turned

down end. This change was made "to eliminate the cylinder barrel from deforming into the cavity of the head casting and the resulting piston seal failures . . . ." Dubuque stated that from January 1, 1969, until July 1, 1973, it had received seven warranty claims requesting replacement of an entire lift cylinder, twenty-four claims for replacement of cylinder barrels and head assemblies, and twenty-three claims for replacement of piston packings.

The plaintiff presented testimony by an expert, who concluded that the failure of the plaintiff's cylinders had occurred because the thickness of the cylinder wall was not uniform and the cylinders were not strong enough to withstand the pressures to which they were exposed. This problem was not one which the consumer could discern without disassembling the machine. The expert stated that in his opinion the cylinders were not designed in accordance with good engineering practice.

*The Warranty Counts.*

Three counts of the complaint against Industrial and one count against Dubuque allege, in effect, that the defendants warranted the merchantability or the fitness of the loader, that the plaintiff relied on those warranties, and that the warranties were breached. The judge ordered a directed verdict for the defendants on all four counts. In his rambling brief, replete with obfuscation, the plaintiff refers to these counts variously as claims for breach of express and implied warranty, misrepresentation, deceit, and claims for violation of G. L. c. 93A. Nothing in the record presented to us indicates that the counts were tried, or argued to the judge, as anything but warranty claims. The defendants' motion for directed verdicts lists six grounds, all of which relate only to a warranty theory of the case. One of the grounds accepted by the judge was: "The evidence establishes as a matter of law that this is a nonconsumer transaction, and that by written terms of the purchase order and other documents executed by plaintiff, there was a written disclaimer of any express warranty or any implied warranties of fitness and merchantability except as provided there-

in, which disclaimer was in compliance with G. L. c. 106, § 2-316, wherefore plaintiff cannot recover in breach of warranty, otherwise than provided therein."

The directed verdicts were appropriately ordered. The warranty printed on the purchase order was offered to the plaintiff expressly by Industrial and was accepted by him. In that express warranty, Industrial, and through it, the manufacturer, Dubuque, disclaimed all other warranties, express or implied. Assuming that the express warranty thus accepted created privity of contract between the plaintiff and either or both of the defendants, then it is clear that, under the terms of the warranty, the plaintiff cannot recover. There is no indication, as the plaintiff argues, that the disclaimers were unconscionable under G. L. c. 106, § 2-302. If, however, there was no privity, the plaintiff would have no warranty claim against the defendants. *Necktas* v. *General Motors Corp.*, 357 Mass. 546, 549 (1970). The plaintiff does not benefit from the enactment of St. 1971, c. 670, § 1, which amended G. L. c. 106, § 2-318, and eliminated the defense of privity to an action for breach of warranty, because he purchased the loader before the effective date of the statute. St. 1971, c. 670, § 2. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 36 (1977).

Even if the vaguely worded allegations of the plaintiff's complaint might be said to state claims for deceit or for violation of G. L. c. 93A, and even if the evidence might have supported such claims, the plaintiff cannot for the first time urge these characterizations of his claims upon this court, as he has failed to demonstrate to us that he gave the judge any indication that the counts were to be considered as such. *Henchey* v. *Cox*, 348 Mass. 742, 747 (1965). See *Mahaney* v. *John Hancock Mut. Life Ins. Co.*, 6 Mass. App. Ct. 919 (1978).

*The Negligence Counts.*

Verdicts were also directed against the plaintiff on separate counts against Industrial and Dubuque for negligently and carelessly manufacturing the loader and sending it into commerce. The directed verdicts were proper because the

plaintiff has neither alleged nor shown that he suffered the type of damages which he would need to prove in order to maintain an action for negligence.

In *McDonough* v. *Whalen*, 1 Mass. App. Ct. 573, 577 (1973), S. C. 365 Mass. 506 (1974), we stated, "In the absence of personal injury or physical damage to property, the negligent supplier of defective products is not ordinarily liable in tort to a purchaser for simple pecuniary loss caused by defective or inferior merchandise" (citation and footnotes omitted). In that case the plaintiffs claimed damages resulting from a negligently designed and installed septic system. In reversing our decision the Supreme Judicial Court expressly refrained from deciding whether the rule quoted above was correct, because it found that the flow of sewage onto the plaintiffs' land did in fact cause physical damage to the land. *McDonough* v. *Whalen*, 365 Mass. at 513. In this case the plaintiff has alleged that the defendants' negligence caused him "severe losses in his business and good will." There has been no suggestion of personal injury or of damage to any property other than to the loader itself. The only damages shown on the record before us are the cost of repair and loss of use of the loader. The loss of use of the loader is clearly "pecuniary," or economic loss which, under our *McDonough* rule, would not make the defendants liable to the plaintiff in tort for negligence. Although the damage to the loader itself, which was caused by its malfunction and is measured by the cost of repair, might be said to be "physical," such damage stands on the same footing as other economic loss.[3] It is thus distinguishable from damage to other property of the plaintiff, such as the damage to the plaintiffs' land in *McDonough*, which may be recovered under traditional tort rules.

---

[3] "Economic loss" in this context has been defined to include "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property . . . ." *Alfred N. Koplin & Co.* v. *Chrysler Corp.*, 49 Ill. App. 3d 194, 199 (1977), quoting from Note, Economic Loss in Products Liability Jurisprudence, 66 Colum. L. Rev. 917, 918 (1966).

We therefore follow the rule we stated in *McDonough* and hold that the purchaser of a manufactured product who claims as damages only economic loss or damage caused by the product to itself cannot maintain a claim for negligent design or manufacture.[4]  For a well reasoned discussion of the basis for this rule see *Alfred N. Koplin & Co.* v. *Chrysler Corp.*, 49 Ill. App. 3d 194, 197-203 (1977).  See also *Karl's Shoe Stores, Ltd.* v. *United Shoe Machinery Corp.*, 145 F. Supp. 376, 377-378 (D. Mass. 1956); *Seely* v. *White Motor Co.*, 63 Cal. 2d 9, 18 (1965); *Wyatt* v. *General Motors Corp.*, 145 Cal. App. 2d 423, 426 (1956); *Long* v. *Jim Letts Oldsmobile, Inc.*, 135 Ga. App. 293, 294-295 (1975); *A. J. P. Contracting Corp.* v. *Brooklyn Builders Supply Co.*, 171 Misc. 157, 159 (Sup. Ct.), aff'd mem. 258 App. Div. 747 (1939), aff'd per curiam 283 N.Y. 692 (1940); *Trans World Airlines* v. *Curtiss-Wright Corp.*, 1 Misc. 2d 477, 479-482 (1955), aff'd mem., 2 App. Div. 2d 666 (N.Y. 1956); *Inglis* v. *American Motors Corp.*, 3 Ohio St. 2d 132, 140 (1965).[5] Although the plaintiff has cited cases which hold to the contrary (see, e.g., *Berg* v. *General Motors Corp.*, 87 Wash. 2d 584 [1976]), we choose not to follow them.  The Uniform

---

[4] While it appears that a negligence action similar to this one was maintained in *Omni Flying Club, Inc.* v. *Cessna Aircraft Co.*, 366 Mass. 154 (1974), the Supreme Judicial Court did not discuss whether such an action was proper or address the question it did not consider in *McDonough* v. *Whalen*, 365 Mass. at 513, nor was it requested to do so.

[5] Many of the cases which deal with this issue focus on whether privity, which had been eliminated as a requirement in negligence suits for personal injury by cases such as *Carter* v. *Yardley & Co., Ltd.*, 319 Mass. 92 (1946), should also be eliminated as a requirement in negligence actions when the only injury is economic. See Annot., 16 A.L.R. 3d 683, 690-694 (1967).  We believe that the issue of privity merely diverts attention from the fundamental issue presented: whether a negligence action can be maintained by any plaintiff who claims only damages such as those alleged in this case. See Annot., 16 A.L.R. 3d at 690 n.11.  In reaching our decision, we do not rely on the presence or absence of privity between the plaintiff and the defendants.  Nor do we have occasion to decide whether, under this rule, a distinction should be drawn between damage to a product resulting from an accident and damage resulting from deterioration in normal use (see e.g., *Trans World Airlines* v. *Curtiss-Wright Corp., supra* at 481-482) because there was no accident here.

Commercial Code, G. L. c. 106, §§ 2-313 through 2-318, governs the commercial expectations of a buyer and seller of goods; we do not believe that entirely distinct principles of tort law should be permitted to frustrate those expectations. *Alfred N. Koplin & Co.* v. *Chrysler Corp., supra* at 203-204.[6]

The plaintiff claims that the language of the defendants' warranty was insufficient to exclude liability for negligence. See *Omni Flying Club, Inc.* v. *Cessna Aircraft Co.*, 366 Mass. 154, 159-160 (1974). We emphasize, however, that our decision is based not upon any specific language of disclaimer, but rather upon the type of damages alleged. We intend no intimation concerning what would constitute a sufficient disclaimer of liability in other types of negligence actions. We do note, however, that one type of damage claimed by the plaintiff, loss of use of the loader, was explicitly disclaimed by the warranty's exclusion of consequential damages. See G. L. c. 106, § 2-719(3).

*Motions to Amend.*

The plaintiff claims error in the failure to allow his motion to amend one count against Industrial by adding a claim for violation of G. L. c. 93A. So far as appears from the record, however, no action was ever taken by the judge. The docket entry simply shows that the motion was referred to the trial judge. The plaintiff should have sought to present the motion to the judge for a ruling. From all that appears he did not, and thus no error has been demonstrated. *Doherty* v. *Phoenix*, 224 Mass. 310, 312 (1916). See *McNa-*

---

[6] To allow tort recovery in a commercial transaction, in which parties in privity are bound either by the warranties implied under our law or by express warranties which they have agreed to substitute for those implied warranties, would be to allow one party to avoid the terms of a bargain he has made. See *Jig the Third Corp.* v. *Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 179-182 (5th Cir. 1975) (dissenting opinion). In a transaction in which there is no direct contractual relationship between the parties, the Legislature has now seen fit to provide broad rights of recovery in warranty by eliminating the defense of privity. G. L. c. 106, § 2-318. Although, as we stated above, the statutory elimination of privity as a defense does not aid the plaintiff's case, that fact does not alter our analysis of the availability of recovery in negligence for this type of damages.

*mara* v. *Westview Building Corp.,* 4 Mass. App. Ct. 670, 672 (1976).

The plaintiff also claims that the judge erred in denying his motion to amend the complaint "by adding a count seeking relief as a class action due to the defective design of the defendant's loader." Both sides in their briefs argue whether the criteria for a class action under Mass.R.Civ.P. 23(a) and (b), 365 Mass. 767, 768 (1974), have been met. There is nothing on the record before us which indicates what, if any, facts were presented or arguments made to the judge. There is a "highly discretionary element" to the judge's decision to allow or to refuse to allow a class action to proceed. *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 40 (1975). In light of our discussion and disposition of all other counts in the complaint, it can hardly be said that the judge abused his discretion in denying the motion to amend. Although the plaintiff claims that his proposed class action amendment also stated a claim under G. L. c. 93A, a statute with a "more mandatory tone" in its class action provision (*Baldassari* v. *Public Fin. Trust,* 369 Mass. at 40), there is no indication that the count was presented to the judge as such. For that reason we will not consider it.

*Judgments affirmed.*