**V.S.H. REALTY, INC.,**
**Plaintiff, Appellant,**

v.

**TEXACO, INC., Defendant, Appellee.**

No. 84–1531.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1984.

Decided March 15, 1985.

Rehearing En Banc Denied
April 29, 1985.

Allan van Gestel, Boston, Mass., with whom Allan J. Sullivan and Goodwin, Procter & Hoar, Boston, Mass., were on brief for plaintiff, appellant.

Robert M. Gault, Boston, Mass., with whom Bruce F. Metge, Washington, D.C., and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, Mass., were on brief for defendant, appellee.

Before COFFIN and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

* Of the District of Massachusetts, sitting by designation.

COFFIN, Circuit Judge.

Appellant V.S.H. Realty, Inc. (V.S.H.) claims that appellee Texaco, Inc. (Texaco) must return a $280,000 down payment V.S.H. paid on a piece of real estate in Chelsea, Massachusetts. V.S.H. claims that Texaco breached the sales agreement, fraudulently induced it into agreeing to the purchase, and violated a Massachusetts statute prohibiting unfair and deceptive acts in business dealings. The district court dismissed the case under Fed.R. Civ.P. 12(b)(6) for failure to state a claim, and denied V.S.H.'s subsequent motion to vacate judgment and to permit an amendment of the complaint. We think the court was correct in dismissing the breach of contract claim but erring in dismissing the common law and statutory deception counts.

## I. Factual Background

On August 11, 1983, V.S.H. offered to purchase from Texaco a used bulk storage petroleum facility for $2.8 million. Texaco accepted the offer on September 7, and V.S.H. made a deposit of $280,000 to be applied against the purchase price. The offer to purchase required Texaco to convey the property "free and clear of all liens, encumbrances, tenancies and restrictions", except for those set forth in the offer. Attached to the offer to purchase was an acknowledgement signed by Texaco stating that, to the best of the company's knowledge and belief, it had not received "any notice, demand, or communication from any local county, state or federal department or agency regarding modifications or improvements to the facility or any part thereof." The offer also included a disclosure by Texaco that fuel oils had "migrated under [Texaco's] garage building across Marginal Street from the terminal [and that] the fuel oil underground as a result of heavy rains or high tides, seeps into the boiler room of the garage building." V.S.H., for its part, expressly stated in the offer that it had inspected the property, and accepted it "as is" without any

representation on the part of Texaco as to its condition.

Problems arose when V.S.H. representatives visited the property in mid-October 1983, approximately a month after Texaco accepted the offer to purchase, and observed oil seeping from the ground at the western end of the property. During a subsequent visit, V.S.H. representatives discovered another oil seepage at the eastern end of the property. V.S.H. then notified Texaco that it would not go through with the purchase unless Texaco corrected the oil problem, provided V.S.H. with full indemnification, or reduced the purchase price. When Texaco refused, V.S.H. demanded return of its down payment. Texaco again refused, and V.S.H. filed this lawsuit on January 10, 1984.

In its three-count complaint, V.S.H. alleges first that Texaco violated Mass.Gen. Laws Ann. ch. 93A, § 2, which prohibits unfair and deceptive acts and practices, basing that assertion largely on Texaco's failure to disclose the seeping oil, and its failure to disclose an investigation of the property by the U.S. Coast Guard. V.S. H.'s second count claims relief for breach of contract, based on Texaco's alleged inability to convey the property at the specified time free of all liens, encumbrances and restrictions. V.S.H.'s contract theory is that the penalties associated with the oil seepage problem constitute an encumbrance on the property. Finally, V.S.H. charges Texaco with common law misrepresentation and deceit for failing to disclose the oil seepage problems and Coast Guard investigation "in the face of repeated inquiries by V.S.H. about the subject."

At the conclusion of a hearing on Texaco's motion to dismiss all three counts, the district court announced without explanation that the contract claims should be dismissed. It also dismissed the common law fraud count at that time, stating that V.S.H. had failed to allege the required affirmative misrepresentation or implicit misrepresentation by partial and ambiguous statements. It deferred decision on the chapter 93A count, and in a latter written decision dismissed that count on two grounds: an Attorney General's regulation

upon which V.S.H. relied was not intended to apply in a transaction between two sophisticated business entities, when one party agrees to take the property "as is"; and Texaco had no duty to disclose the oil seepages to V.S.H., and so its failure to do so could not have violated chapter 93A.

Our approach to reviewing a dismissal of a complaint at such a preliminary stage of proceedings is necessarily informed by the teaching that we must consider "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims", *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). With that view of our task in mind, we disagree with the action taken by the district court with respect to the counts based on chapter 93A and common law misrepresentation. V.S.H.'s original complaint may well have been vague in some allegations, but we believe that it presented "enough information to 'outline the elements of the pleaders' claim'", *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357).[1] V.S.H. is therefore "entitled to be heard more fully than is possible on a motion to dismiss a complaint." *Scheuer, id.* 416 U.S. at 250, 94 S.Ct. at 1693. We affirm the dismissal of the count based on breach of contract. We shall first discuss the counts based on common law misrepresentation and chapter 93A, ending with the count based on breach of contract.

## II. Sufficiency of the Complaint

### A. Common Law Misrepresentation

V.S.H. bases its count for common law misrepresentation on Texaco's partial dis-

closure of oil seepages, the deliberate concealment of other leaks and the failure to acknowledge the U.S. Coast Guard investigation of the spills. The failure to disclose is actionable, V.S.H. argues, because it repeatedly asked Texaco about oil leaks on the premises, yet Texaco knowingly made only partial disclosure of them. V.S.H. alleges that Texaco's fragmentary disclosures induced it to enter into the contract, and caused it damage in the form of the $280,000 down payment which it otherwise would not have made.

■ The district court dismissed the misrepresentation count because

"[t]here was no fiduciary duty here. The parties dealt at arm's length with each other, and there was no peculiar duty to speak. There were no material misrepresentations on which the buyers relied."

What we face here, however, are allegations of partial or incomplete statements that may by their incompleteness be actionable. Restatement of Torts (Second), §§ 529, 551(2)(b). There is much case law in Massachusetts supporting the proposition that a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party.

"Although there may be 'no duty imposed upon one party to a transaction to speak for the information of the other ... if he does speak with reference to a given point of information, voluntarily or at the other's request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge. Fragmen-

---

**1.** When we consider the amended complaint, *see* appendix, rejected by the court, our conclusion takes on added strength. The new averments, especially paragraphs 10 and 13, seem to state a classical misrepresentation claim. Indeed, we cannot escape the impression that had the court directly focused on them, it might well have allowed the amendments. For it had earlier asked counsel for V.S.H. if he intended to amend, had learned that counsel would ask leave to amend if dismissal were contemplated, and had, on dismissing two counts, specifically noted that V.S.H. could file an amendment

within a reasonable period of time. Counsel said he would await a formal ruling on all counts. Subsequently, as if the matter had fallen between stools, the court dismissed the entire complaint and, eight days later, V.S.H. served its motion on Texaco. Under these circumstances the short delay and absence of any likelihood of prejudice would have clearly indicated granting the motion for leave to amend under *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) and *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.1983) had the new averments received a focused attention.

tary information may be as misleading ... as active misrepresentation, and half-truths may be as actionable as whole lies ....' See Harper & James, Torts, § 7.14. See also Restatement: Torts, § 529; Williston, Contracts (2d ed.) §§ 1497–1499." *Kannavos v. Annino,* 356 Mass. 42, 48, 247 N.E.2d 708 (1969). *See also Maxwell v. Ratcliffe,* 356 Mass. 560, 562–63, 254 N.E.2d 250 (1969) ("Because the question of the dryness of the cellar had been raised expressly, there was special obligation on the brokers to avoid half truths and to make disclosure at least of any facts known to them or with respect to which they had been put on notice."); *Nei v. Boston Survey Consultants, Inc.,* 388 Mass. 320, 322, 446 N.E.2d 681 (1983) ("[T]here is no suggestion that the defendants made a partial disclosure or stated a half truth which may be tantamount, under certain conditions, to a falsehood if there is no further expatiation."); *Nei v. Burley,* 388 Mass. 307, 446 N.E.2d 674 (1983); *Catalina Yachts v. Old Colony Bank & Trust Co.,* 497 F.Supp. 1227 (D.Mass.1980).

This duty to avoid misrepresentations is so strong that the deceived party is not charged with failing to discover the truth. *Snyder v. Sperry & Hutchinson Co.,* 368 Mass. 433, 446, 333 N.E.2d 421 (1975) ("[I]f the seller's representations are such as to induce the buyer not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the seller's assurances, his failure to ascertain the truth through investigation does not preclude recovery.").

■ We believe the allegations in V.S. H.'s complaint regarding partial and ambiguous statements satisfy the requirements for stating a claim of misrepresentation. V.S.H. has alleged that it made "repeated inquiries" about oil leaks on the property, to which Texaco failed to fully respond. In addition, Texaco stated in an acknowledgement attached to the contract that it had "not received any notice, demand, or communication from any local county, state or federal department or agency regarding modifications or improvements to the facility or any part thereof." [2] Even if it is technically correct that Texaco had received no governmental communication specifically related to modifications or improvements to the facility, its failure to disclose the Coast Guard investigation of the property is arguably an actionable misrepresentation. The district court also recognized the ambiguity in Texaco's assertion, noting that "the question whether that [the Coast Guard investigation] is a notice regarding modifications or improvements of the facility is a matter of argument." Finally, and significantly, we note that Texaco affirmatively stated (with some implication of exclusivity) the existence of one leak. The combination of Texaco's affirmative disclosure of one leak, its failure to disclose the others, and its failure to acknowledge alleged Coast Guard investigation of the seepages, at a minimum, makes this case a stronger one of misrepresentation than *Nei v. Burley,* 388 Mass. 307, 310, 446 N.E.2d 674, where the Supreme Judicial Court held that the defendants "did not convey half truths nor did they make partial disclosure of the kind which so often requires a full acknowledgement to avoid deception." It is our conclusion, therefore, that the district court erred in dismissing the claim for common law misrepresentation.

**B. Breach of Mass.Gen.Laws Ann. ch. 93A**

Mass.Gen.Laws Ann. ch. 93A generally prohibits unfair or deceptive acts or prac-

---

**2.** This paragraph followed V.S.H.'s acknowledgement that various regulations may require it to spend substantial sums of money for improvements to the facility, and that it was willing to assume responsibility for compliance with all applicable regulations. In its amended complaint, V.S.H. alleged that it insisted on the disclaimer from Texaco because it knew that current landowners can be held liable for oil leaks, spills and related problems even if the actual environmental damage was caused by a prior owner. V.S.H.'s allegation implies that the Texaco disclaimer was its form of protection when it agreed to accept responsibility, since the disclaimer suggested that Texaco knew of no outstanding problems with the property. It may be that there was no significant problems. V.S.H. should be allowed to proceed on the basis of its allegations, however, to discover the extent, if any, of Texaco's culpability.

tices in business.[3] When it was first enacted in 1967, its primary goal was protection of consumers, *Manning v. Zuckerman,* 388 Mass. 8, 12, 444 N.E.2d 1262 (1983), but the addition of section 11 in 1972 extended chapter 93A's coverage to business persons involved in transactions with other business persons. *Id.* Chapter 93A has been interpreted to be " 'a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights' ", *id.,* (quoting *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 693, 322 N.E.2d 768 (1975)). "This act is one of several legislative attempts in recent years to regulate business activities with the view to providing proper disclosure of information ...", *Commonwealth v. DeCotis,* 366 Mass. 234, 316 N.E.2d 748 (1974).

Chapter 93A § 2 provides no definition of an unfair or deceptive act or practice, and instead directs our attention to interpretations of unfair acts and practices under the Federal Trade Commission Act as construed by the Commission and the federal courts. *Commonwealth v. DeCotis,* 366 Mass. at 241, 316 N.E.2d 748; *PMP Associates, Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 595, 321 N.E.2d 915 (1975). The section also empowers the Attorney General to make rules and regulations interpreting § 2(a). *See* § 2(c). V.S.H. relies heavily on one such regulation to support its allegation that Texaco violated chapter 93A.

The Attorney General's regulation in Mass.Admin.Code tit. 20, § 3.16(2) states that an act or practice violates chapter 93A if:

"Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction."

V.S.H.'s complaint appears to state a claim under this regulation and, in fact, mirrors its language. V.S.H. alleged in paragraph 19 of its complaint that Texaco's failure to disclose the oil leaks that V.S.H. representatives discovered in October 1983 "are facts the disclosure of which may have influenced V.S.H. not to enter into the transaction and agree to pay the sum of $2,800,000 for the premises or to pay a deposit in connection therewith of $280,-000."

The district court found an inadequacy in the complaint by concluding that the disclosure language of regulation § 3.16 is incomplete.[4] The court decided that "unless a defendant has a duty to speak, his nondisclosure of a defect does not constitute a violation of chapter 93A even if the information may have influenced the buyer not to enter into the contract." The court then went on to hold that Texaco did not have a duty to disclose the oil leaks to V.S.H. We disagree for two reasons. First, even if we were to accept the court's premise that nondisclosure is a violation of chapter 93A only when there is a duty to disclose, we

---

**3.** Chapter 93A reads, in relevant part, as follows:
"§ 2. *Unfair practices; legislative intent; rules and regulations*
   (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
"§ 11. Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may ... bring an action...."

**4.** Texaco argues that § 3.16 actually condemns only failures to disclose that are unfair or deceptive as described by Massachusetts standards, *Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 775, 407 N.E.2d 297 (1980), and that this is not such a case. While we agree with that general proposition, it is also true that "the existence of unfair acts and practices must be determined from the circumstances of each case", *Commonwealth v. DeCotis,* 366 Mass. at 242, 316 N.E.2d 748; *see also Mechanics National Bank of Worcester v. Killeen,* 377 Mass. 100, 384 N.E.2d 1231 (1979); *Schubach v. Household Finance Corp.,* 375 Mass. 133, 376 N.E.2d 140 (1978); *Noyes v. Quincy Mutual Fire Insurance Co.,* 7 Mass.App. 723, 389 N.E.2d 1046 (1979).

would find that V.S.H. has met its burden of establishing a duty by alleging that Texaco made partial or incomplete statements regarding the oil leaks on the property. *See* Restatement of Torts (Second) §§ 551, 529. *See supra* p. 415.

■ We are not convinced, however, that V.S.H. needs to allege more than a failure to disclose a material fact to state a cause of action under chapter 93A. In *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768 (1975), the Massachusetts Supreme Judicial Court examined chapter 93A at length, and emphasized the distinction between that statutory cause of action and the common law action for fraud and deceit, which would require a duty to disclose. It pointed out that "the definition of an actionable 'unfair or deceptive act or practice' goes far beyond the scope of the common law action for fraud and deceit.... [A] § 9 [or § 11] claim for relief ... is not subject to the traditional limitations of preexisting causes of action such as tort for fraud and deceit." *Id.*, at 703–04, 322 N.E.2d 768. Massachusetts case law suggests that one difference between a fraud claim and the more liberal 93A is allowance of a cause of action even in the absence of a duty to disclose. *See Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 323–24, 446 N.E.2d 681 (1983), where the court appeared ready to find chapter 93A liability even though it found no duty to speak.[5] *See also Nei v. Burley*, 388 Mass. 307, 316, 446 N.E.2d 674 (1983).

The district court, however, had another reason for dismissing the claim. It concluded that chapter 93A liability was precluded because V.S.H. is a sophisticated buyer who had the opportunity to inspect the property and who agreed to purchase the property "as is". The court noted that "this type of contractual arrangement is expressly permitted under the Uniform Commercial Code, M.G.L. c. 106, § 2–316, in non-consumer sales of goods", and it thus "would be anomalous to hold that 'as is' contracts are permissible in sales of goods cases but not in commercial sales of land cases." It concluded:

"Absent allegations of the non-detectability of defects on inspection or their fraudulent concealment by a defendant, a plaintiff who has inspected the premises to be purchased and has agreed to purchase the land 'as is' cannot rely on § 3.16(2) to establish a defendant's violation of chapter 93A."

We believe the district court's view of the law regarding "as is" clauses is incorrect. Although the Uniform Commercial Code does expressly permit disclaimers in the sale of goods between merchants, § 2–316 refers specifically to disclaimers of implied warranties, suggesting to us that it was intended only to permit a seller to limit or modify the contractual bases of liability which the Code would otherwise impose on the transaction. The section does not appear to preclude claims based on fraud or other deceptive conduct. Section 1–102(3) of Mass.Gen.Laws ch. 106 lends support to this interpretation of § 2–316. It states:

"The effect of provisions of this chapter may be varied by agreement, except as otherwise provided in this chapter and *except that the obligations of good faith, diligence, reasonableness and care prescribed by this chapter may not be disclaimed by agreement ...*" (emphasis added).

We find further support for our view implicit in *Marcil v. John Deere Industrial Equipment Co.*, 9 Mass.App. 625, 403 N.E.2d 430, *app. denied*, 380 Mass. 940 (1980). The court in that case upheld a disclaimer of all express and implied warranties other than the warranty specified on the purchase order, finding that there was no indication that the disclaimer was unconscionable. The court went on to note that the vaguely worded allegations of the plaintiff's complaint may have stated claims for deceit or violation of chapter 93A, but the plaintiff failed to characterize

---

**5.** The court declined to find the statutory liability only because the defendants played a minor role in the purchase of the property.

them as such to the trial judge, and so he was not allowed to do so for the first time on appeal. Our reading of *Marcil* is that even if a disclaimer on its face is not unconscionable, it is subject to challenge if a plaintiff, as in this case, properly raises allegations of deceit and violation of chapter 93A.

Our conclusion here does not mean that an "as is" clause would never be given effect in real estate transactions where the buyer alleged the seller's failure to disclose a material defect in the property. The Supreme Judicial Court has held that § 3.16(2) imposes liability only when the defendant had knowledge, or should have known of the defect, and where a direct relationship existed between the parties. *See Lawton v. Dracousis*, 14 Mass.App. 164, 171, 437 N.E.2d 543, 547, *app. denied*, 387 Mass. 1103, 440 N.E.2d 1177 (1982) (failure to disclose building code violations not actionable where seller did not know or have reason to know of violations); *Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 324, 446 N.E.2d 681 (1983). It is possible that § 3.16(2) will be found inapplicable in other situations involving "as is" clauses.

Even more persuasive than this inferential reasoning based on the Uniform Commercial Code is the fact that Massachusetts case law unequivocally rejects assertion of an "as is" clause as an automatic defense against allegations of fraud:

> "The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent the policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agree-

ment." *Bates v. Southgate*, 308 Mass. 170, 182, 31 N.E.2d 551 (1941).

*See also Schell v. Ford Motor Company*, 270 F.2d 384, 386 (1st Cir.1959) ("under the law of Massachusetts ... *in the absence of fraud* a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence....) (emphasis added).

Texaco acknowledges that a party may not contract out of liability for fraud. It argues instead that the specific language of the disclaimer in this case precludes recovery by V.S.H., (i.e., that V.S.H. did not rely on any representations); Texaco relies heavily, however, on a case from another jurisdiction to support this proposition, *Landale Enterprises, Inc. v. Berry*, 676 F.2d 506 (11th Cir.1982). *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551 (1941), is the controlling precedent on this issue in Massachusetts, not *Landale*.[6] Texaco also implies that the disclaimer must be given full effect because V.S.H. is a "sophisticated" purchaser, experienced in real estate transactions.

Although we agree that V.S.H.'s experience in the real estate business, along with the presence of an "as is" clause, is relevant to the ultimate disposition of the chapter 93A claim, we do not find that either factor makes V.S.H.'s claim insufficient as a matter of law. Sophistication of the parties is not mentioned in chapter 93A and the amendment of chapter 93A to cover business entities did not limit the statute's protection to small, unsophisticated businesses. It may be that the Massachusetts Supreme Judicial Court ultimately should decide the question of whether an "as is" clause ever should be ignored in a transaction between two sophisticated businesses and, thus, whether the existence of one should preclude a chapter 93A cause of action. We do not believe, however, that it would, or could, do so without development of a factual record.[7] For that reason, and

---

6. It is worth noting that in *Landale* the disclaimer was drafted by the party seeking to invalidate the sales contract. *Id.* 676 F.2d at 508. Texaco drafted the clause in the instant contract.

7. We note that the district court may wish to certify this question at an appropriate point in the proceedings.

the absence of any contrary precedent in Massachusetts law, we conclude that the district court erred in dismissing the chapter 93A claim.[8]

## C. Breach of Contract

V.S.H. argues that Texaco breached the contract between them when it refused to return V.S.H.'s $280,000 down payment even though Texaco could not convey the Chelsea property free of all encumbrances, restrictions and liens. V.S.H.'s argument is that the oil seepages and barrier facility constructed to control the seepages subject the property and its owners to various penalties, which amount to encumbrances on the title. V.S.H. cites, among other statutes, the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen.Laws Ann. ch. 21E. Section 5 of that statute imposes liability on the owner of a site at which there is or has been a release or threat of release of oil, and section 13 provides that the cost of clean-up may constitute a lien on the property of all persons liable under the statute. V.S.H. also points to Mass.Gen.Laws Ann. ch. 131, § 40, which prohibits the filling, dredging or altering of any bank bordering on any creek of any land subject to tidal action, coastal storm flowage or flooding, without permission from the local conservation commission. V.S.H. alleges in its complaint that the bank bordering on Chelsea Creek, and the land surrounding it, are subject to those environmental events, and that Texaco's construction of a dam or barrier facility on its property following the Coast Guard investigation is a violation of the statute. The statute provides that anyone who acquires the property is responsible for restoring it to its prior condition, and

that fines, imprisonment or injunctive relief may be obtained by the Attorney General, local officials or any group of ten Massachusetts residents.

Texaco contends that V.S.H.'s citation to these Massachusetts statutes, and equivalent federal statutes,[9] is insufficient because V.S.H. has not alleged enough facts to establish that conditions presently exist such that the property would be deemed encumbered by a statutory violation.

■ As a general proposition, the "mere possibility" that someone might subject the purchaser to litigation is not enough to require a return of a deposit, *Orenberg v. Johnston*, 269 Mass. 312, 316, 168 N.E. 794 (1929). Sufficient facts must be alleged "showing that the property was or might be subject to adverse claims such as might *reasonably* be expected to expose the purchaser to controversy in order to maintain his title", *Pill v. Levine*, 252 Mass. 513, 517, 147 N.E. 837 (1925) (emphasis added).

On the other hand, V.S.H. cites several cases more hospitable to recognizing the existence of an encumbrance. In *Silverblatt v. Livadas*, 340 Mass. 474, 164 N.E.2d 875 (1960), it was held that a letter from a building inspector to a seller of property that a fire escape would have to be replaced by either the owner or the city (in which case a lien would be imposed) would not be an encumbrance *made by* the grantor—even if, arguably, this kind of inchoate lien could constitute an encumbrance. In *Sawl v. Kwiatkowski*, 349 Mass. 712, 212 N.E.2d 228 (1965), the court held that a prospective buyer was not entitled to specific performance of a real estate contract because of a possible inheritance tax lien

8. We note, but do not rely on, another section of the Attorney General regulations, § 3.05(1) (Mass.Admin.Code tit. 20), which V.S.H. pointed out in its amended complaint:

"No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect."

Although V.S.H. did not specifically cite to § 3.05 in its original complaint, the amended complaint links that section (as well as § 3.16) with Texaco's alleged failure to disclose the oil leaks and Coast Guard investigation, and the original complaint contains all of the factual allegations necessary for that connection.

9. The Federal Clean Water Act, 33 U.S.C. § 1321 and the Federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.

on the property. The master had found that there was a " 'reasonable probability' " that an inheritance tax was due and that " 'the probability of ... a lien ... [was] sufficiently great to render the tile non-marketable in the absence of ... evidence that [the locus was] free of such lien....' " *Id.* at 713, 212 N.E.2d 228. In *Mahoney v. Nollman*, 309 Mass. 522, 35 N.E.2d 265 (1941), the court ruled that a buyer was entitled to a return of its deposit because of a possible lien on the land in favor of a legatee who had not been satisfied by the testatrix' estate. Even though no specific claim had been made and the Attorney General was the only one who could enforce the lien, the court held that the title to the property was sufficiently doubtful:

> "The defendant is entitled to assume that [the Attorney General] will perform his duties in that respect in the matter of the estate of the testatrix. So far as appears, resort may be necessary to the land in question for satisfaction of these legacies for a public charity." *Id.* at 527, 35 N.E.2d 265.

■ We resolve this issue by affirming the district court. As far as any "encumbrance" attributable to chapter 21E, proscribing the release of oil and enabling the Commonwealth to secure its recovery of any clean-up costs by means of a lien, we note several missing links in the chain of imminency that characterized both *Sawl* and *Mahoney*. In the first place, nearly three months had elapsed between V.S.H.'s discovery of additional seepage and the filing of its complaint. Thus, the absence of any allegations concerning complaints or clean-up orders renders quite speculative their likely existence. In the second place, the appropriateness of any clean-up order was subject both to an adjudicatory administrative hearing and judicial review. Chapter 21E § 10.

As for any encumbrance attributable to chapter 130 § 40, we note the nearly three month period mentioned above; the uncertainty of an encumbrance arising from the precondition of suit in equity being brought and won; and, finally, the fact that neither in the original nor amended complaint was there an allegation that Texaco, in responding to the Coast Guard investigation and constructing a dam or barrier on its bank bordering Chelsea Creek, did so without giving notice to and receiving permission from the appropriate authorities. In short, no violation of § 40 was alleged.

We therefore cannot fault the district court for dismissing this count.

*For the foregoing reasons, we affirm the dismissal of the contract count, and reverse the judgment of the district court on the misrepresentation and chapter 93A counts, remanding for further proceedings consistent with this opinion.*

BREYER, Circuit Judge (concurring in part and dissenting in part).

The common law misrepresentation issue is a close one given the Supreme Judicial Court's refusal to find liability in *Nei v. Burley*, 388 Mass. 307, 446 N.E.2d 674 (1983) (no misleading partial disclosure where seller gave buyer percolation test showing too much water on land while failing to disclose seasonal stream). But I agree with the panel that enough is alleged to avoid dismissal of the complaint.

I do not agree, however, with the panel's suggestion that Mass.Gen.Laws ch. 93A would allow a finding of liability for pure *nondisclosure* in a case like this one, involving sophisticated business parties and an "as is" contract. The question is difficult, and certification of this question to the Massachusetts Supreme Judicial Court might at some point be appropriate. *See* S.J.C. Rule 1:03; *Clay v. Sun Insurance*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960). But, if forced to decide the chapter 93A question, I must disagree with the panel majority; the following factors persuade me that the panel is wrong.

First, the panel's interpretation of chapter 93A virtually reads the "as is" contract out of Massachusetts law. If a seller knows he is liable for failing to disclose any material fact about which he "should have

known," he will have to check the merchandise or property, and list every defect that he finds. Failure to do so certainly risks (if it does not assure) liability. Yet, it is the very purpose of an "as is" contract to shift the burden of inspection and the costs of hidden defects to the buyer. The Massachusetts Commercial Code, Mass.Gen.Laws ch. 106, § 2–316(3)(a) specifically authorizes "as is" contracts. As the district court pointed out, it is anomalous to read a different statute (chapter 93A) in a way that makes § 2–316(3)(a) of the UCC virtually meaningless. The panel majority says that perhaps the UCC's "as is" rule will still have meaningful life in other situations. Which situations? Where? How?

Second, there is a theoretical argument suggesting that applying chapter 93A here may not help—indeed it may hurt—the consumer. The basic object of chapter 93A, insofar as it requires disclosure, is to allow the consumer to make an informed choice, and thus to protect him from entering into a contract that he would not 'really' want were he more knowledgeable or sophisticated. *See generally* E. Kintner, *A Primer on the Law of Deceptive Practices* ix–xi (1978). That purpose is not directly served when the bargaining parties are knowledgeable, sophisticated businessmen. Moreover, where the contract explicitly states that the knowledgeable buyer runs the risk of, say, hidden defects (*e.g.*, where the contract says "as is"), the knowledgeable business buyer quite clearly knows what kind of situation he is getting into, and, in all likelihood, it is one (given the price) that he wants.

Under such circumstances, to allow an action under chapter 93A not only fails to serve the Act's main purpose but indeed may harm those whom the Act seeks to protect. To insist that the knowledgeable business seller disclose all material facts that the seller "should have" known (to forbid, in effect, the "as is" contract), is to prevent the buyer and seller from allocating costs and risks as they choose in both the presumably rare situation involving deceptive conduct by the seller and the more typical *non*deceptive situation. And, such a prohibition, as a general matter, may raise the price of the underlying good or service by preventing the allocation of risks (*e.g.*, of hidden defects) to the party willing to bear them most cheaply. Of course, one may think of this general price-increasing tendency as too theoretical, as ephemeral, or not worth much consideration when consumer protection is on the other side of the balance scale; but, it is, at the least, worth consideration when weighed against the need to protect those who typically need no protection (such as knowledgeable business buyers).

Third, there might be some justification for refusing to enforce an "as is" clause if the contract were ambiguous in some way that cast doubt on whether the buyer truly intended to waive his remedies against the seller. In such a case one might hesitate to find a waiver regardless of the knowledge or sophistication of the buyers. But this is not such a case: the "as is" clause in the Texaco-VSH contract could not be more clear.

Finally, I would hesitate to base a legal decision upon the foregoing considerations, were there Commonwealth legal precedent to the contrary. But there is not. The Massachusetts courts have not held that chapter 93A requires disclosure of all material defects in a case involving *business* buyers and sellers, let alone a case involving *both* businessmen *and* a contract explicitly agreeing that the disclosure need not take place. *Marcil v. John Deere Industrial Equipment Co.*, 9 Mass.App. 625, 403 N.E.2d 430 (1980), cited by the panel majority, does not hold that a disclaimer of warranties (in a contract between two businesses) violates chapter 93A (even where it does not violate other law). The appellate court in *Marcil* specifically says it does not reach the issue:

> Even if the vaguely worded allegations of the plaintiff's complaint might be said to state claims for deceit or for violation of G.L. c. 93A, and even if the evidence might have supported such claims, the

422

plaintiff cannot for the first time urge these characterizations of his claims upon this court, as he has failed to demonstrate to us that he gave the judge any indication that the counts were to be considered as such.

9 Mass.App. at 629, 403 N.E.2d at 433 (citations omitted). I do not see how the panel finds support in this Massachusetts Court of Appeals decision.

Nor is there support in the Supreme Judicial Court's decision in *Nei v. Boston Survey Consultants*, 388 Mass. 320, 446 N.E.2d 681 (1983). The SJC there held chapter 93A applicable to a land sale contract involving consumers on one side of the bargaining table and a contract that did *not* explicitly or implicitly seek to allocate the burden of nondisclosure. The circumstances of that case take it outside the "as is" business sale transaction—the case here at issue and the case that strikes me as difficult.

The legal support for the majority's position consists of the Attorney General's regulation, which literally applies to *all* transactions, making no exception for "as is" business sales. There is no indication, however, that the Attorney General considered the "as is" business transaction when writing the regulation. At the same time, to apply the regulation literally makes a different statute—the UCC "as is" provision, § 2–316(3)(a)—nearly meaningless and seems not to further the purposes of chapter 93A. It is a common thing for statutes, rules, and regulations that purport to apply in 'all' circumstances, in fact to contain implied exceptions. *See, e.g.*, 9 C. Wright & A. Miller, *Federal Practice and Procedure (Civil)* § 2558 at 671–72 (1971) (noting "plain error" exception to Fed.R.Civ.P. 51); *see generally*, Merz, *The Meaninglessness of the Plain Meaning Rule*, 4 Dayton L.Rev. 31 (1979). Under these circumstances, I agree with the district court that the regulation was not meant to override Massachusetts policy permitting "as is" contracts, at least where the contract language is clear, the contract

is made by knowledgeable business parties, and the contract is untainted by any affirmative misrepresentation, fraud, or otherwise unlawful conduct.

For these reasons, I agree only in part with the panel majority.

**APPENDIX**

Excerpted below are relevant sections of V.S.H.'s original and amended complaints.

*Original Complaint*

¶ 19. "The failure of Texaco to disclose to V.S.H. the facts relating to the oil leaks referred to in paragraphs 11 and 12 [detailing V.S.H.'s discovery of two leaks] are facts the disclosure of which may have influenced V.S.H. not to enter into the transaction and agree to pay the sum of $2,800,000 for the premises or to pay a deposit in connection therewith of $280,000."

¶ 26. "The regulations, prohibitions, lien provisions and other requirements of the several federal and state environmental statutes referred to [in paragraphs 23–25], as applied to the facts relating to the oil leaks and spillages at the premises, result in a situation in which, at the time of closing, Texaco was unable to convey title free and clear of all liens, encumbrances and restrictions."

¶ 28. "The deliberate and knowing concealment by Texaco of information relating to the oil leaks and spills ... and the U.S. Coast Guard proceedings ... occurred in the face of repeated inquiries by V.S.H. about the subject.... Its release of fragmentary information was misleading and misrepresented the facts."

¶ 29. "The failure of Texaco to provide the facts regarding the oil leaks was intended to and in fact materially induced V.S.H. to agree to purchase the property on the assumption that no such problems existed. V.S.H. rightly relied upon that assumption in making its offer to purchase."

*Amended complaint*

¶ 10. "Prior to submitting the offer to purchase ... V.S.H. ... on several occasions asked Texaco's representatives about oil spills, leaks and other similar environmental problems at the site. On each occasion, Texaco's representatives affirmatively stated that they were unaware of any such problems.

¶ 15. "... The failure of Texaco to disclose the leaks and its affirmative misrepresentations in response to V.S.H.'s inquiries concerning the subject fraudulently concealed the problems and diverted V.S.H. from discovering the spillages before submitting the offer."

¶ 26. "Texaco's conduct was both unfair and deceptive. The acts of Texaco in failing to disclose the information regarding the oil leaks and in making affirmative misstatements and half-truths concerning the subject constitute willful or knowing violations of General Laws, chapter 93A, section 2, and the regulations promulgated in connection therewith."

¶ 32. "Had V.S.H. purchased and taken possession of the property, it would have been obligated to report the leaks and spillages ... to federal and state officials."

¶ 33. "Had V.S.H. purchased and taken possession of the property, it would have had an affirmative obligation to clean up or otherwise rectify the aforementioned spillages and leaks."

¶ 34. "Had V.S.H. purchased and taken possession of the property and remained inactive concerning the leaks and spillages, federal and state officials would have been authorized, and indeed obligated, to assume clean-up costs and to impose corresponding liens on the property. In addition, V.S.H. would have been subject to criminal penalties by fine or imprisonment, or to civil litigation."

¶ 35. See ¶ 26 of original complaint.

¶ 37. "The deliberate and knowing concealment by Texaco of information relating to the oil leaks and spills ... and the U.S. Coast Guard proceedings ... occurred in the face of repeated inquires by V.S.H. about the subject prior to making the offer to purchase.... Its release of fragmentary information was misleading and misrepresented the facts. The statements of Texaco representatives that they were unaware of any environmental problems, including oil spills and leaks, connected with the property were knowing and affirmative misrepresentations of fact."

¶ 38. "The failure of Texaco to provide the facts regarding the oil leaks and its affirmative misrepresentations of fact were intended to and in fact materially induced V.S.H. to agree to purchase the property on the assumption that no such problems existed. V.S.H. rightly relied upon that assumption in making its offer to purchase."