Fishman, J.

INTRODUCTION

Plaintiff, Michael F. Sosik, Jr. (“Sosik”), brings this action against defendants Albin Marine, Inc. (“Albin”), Nauset Marine, Inc. (“Nauset”), and Peninsular Engines, Inc. (“Peninsular”). Sosik seeks to recover damages resulting from the malfunctioning of a boat and its engines which he purchased from Nauset. Nauset and Peninsular move for summary judgment on all six counts of Sosik’s complaint. For the reasons set forth below, the defendants’ motions for summary judgment are DENIED in part and ALLOWED in part.

BACKGROUND

Following are the facts viewed in the light most favorable to the nonmoving party.
Sosik has owned and operated three businesses throughout his life. In 1969, he started a construction company, which failed five years later. In 1990, Sosik started a credit card processing company, and, in 1998, he started a charter service company called Northeast Charter Services, Inc.
Nauset, a business incorporated in Massachusetts, operates as a full service marine dealer in Orleans, Massachusetts. Nauset sells Albin’s product line of marine vessels. Peninsular is a corporation with its headquarters in (Grandville, Michigan: Peninsular sells diesel engines and their component parts. Hansen Marine Engineering (“Hansen”) is an independent distributor and warranty agent for Peninsular.
Upon starting his charter service, Sosik purchased a new Albin 31-foot Tournament Express (T/E). This was the first time Sosik had ever purchased a new boat, and was the largest purchase he had ever made. The sale occurred on November 11, 1997, when Sosik visited Nauset and met with one of its salesmen, Paul Ayles (“Ayles”). Upon learning of Sosik’s intent to use the vessel for his charter service, Ayles suggested that the boat be powered by Peninsular engines. Sosik claims to have relied on Ayles’ advice. On November 11, 1997, Sosik signed a Purchase and Sales Agreement (“the Agreement”), which was prepared by Nauset, for anew Albin 31 T/E boat (“boat”) with Twin Peninsular Diesel engines (“Peninsular engines”). The Peninsular engines came with component parts such as starters, a fuel injector pump, solenoid and relays. Before signing the Agreement, a major concern of Sosik’s was where the boat would be serviced. When Sosik voiced this concern to Ayles, Ayles assured Sosik that Nauset would service the vessel in Maine. Although Ayles was aware of Sosik’s planned commercial use of the boat, he made no mention to Sosik that both Nauset’s and Peninsular’s warranties excluded coverage to boats used for commercial purposes.
*399 Below Sosik’s signature, the Agreement reads: SIGNATURE CONFIRMS RECEIPT OF ADDITIONAL TERMS AND CONDITIONS OUTLINED ON SIDE 2 OF THIS AGREEMENT.
Paragraph nine, appearing on Side 2 of the Agreement states, in relevant part:
New Boat Warranties. EXCEPT TO THE EXTENT REQUIRED BY STATE LAW, SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. All warranties covering the equipment referred to on page 1 of this Agreement, if any, are made by the manufacturer. A copy of any applicable manufacturer’s warranty shall be delivered by Seller to Buyer.
Approximately six months later, on May 9, 1998, Sosik took possession of his new Albin. At that time, he received from Nauset a packet of warranty documents applicable to the boat and its various parts. Enclosed in the packet was a warranty registration card which Sosik signed. Typed in capital letters on the line of the registration card identifying the recipient of the warranty is “Northeast Charter Services, Inc.” Sosik’s signature appears below the name of his company. On the opposite side of the card, Ayles signed his name. Above Sosik’s signature the warranty card read: “The Purchaser hereby acknowledges receipt of the ALBIN MARINE, INC. LIMITED WARRANTY attached to this card and hereby agrees to all of the terms, provisions, conditions and limitations contained herein.”
The limited warranty section of the card states: “THIS LIMITED WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED. THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR FITNESS FOR A PARTICULAR PURPOSE.” It further states that “(a]t its option, Manufacturer will replace or repair within twelve (12) months from the date of delivery to the original purchaser any part (except as provided below) which is proven to the Manufacturer’s satisfaction to be defective under normal use and service.” In addition, there is a section entitled “This Limited Warranty Shall Not Apply To,” which is followed by thirteen paragraphs typed in a small font. Paragraph seven states: “Any boat which has been subjected to misuse, negligence, alteration or accident, or which has been used for racing or commercial, rental or other income producing activities, or which has been operated contrary to any instructions furnished by Manufacturer.”
Lastly, the “GENERAL PROVISIONS” section of the warranty provides:
NOTICE
NOTHING IN THIS LIMITED WARRANTY IS INTENDED NOR SHALL IT IMPLY OR BE CONSTRUED TO CREATE ANY IMPLIED WARRANTIES OF ANY KIND ON THE PART OF THE MANUFACTURER. ALSO NOTHING HEREIN SHALL IMPLY OR BE CONSTRUED OR DEEMED TO CREATE ANY OBLIGATION ON THE PART OF THE MANUFACTURER TO PAY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSSES.
ALL STATUTORY IMPLIED WARRANTIES ARE NEGATED AND WAIVED. IN THE EVENT STATUTORY OR CASE LAW PREVENTS SUCH WAIVER ORNEGATION, RECOVERABLE DAMAGES SHALL BE LIMITED TO THE REPLACEMENT OF PARTS OR ATTHE ELECTION OF MANUFACTURER THE DIRECT AND PROXIMATE DAMAGES, AND FURTHER PROVIDED THAT NOTICE OF CLAIM IS MADE WITHIN TWELVE (12) MONTHS OF THE DATE OF THE DELIVERY OF THE BOAT TO THE ORIGINAL PURCHASER.
Among the warranty documents, Sosik also received Peninsular’s limited warranty which provided that the limited warranty was good for 12 months or 2,000 hours of engine use, whichever came first. In relevant part, Peninsular’s limited warranty provides:
LIMITED WARRANTY ON PENINSULAR MARINE DIESEL ENGINES for Marine Pleasure Boat
Peninsular . . . warrants only to the first retail purchaser who is the ultimate user and owner that it will repair any defective or malfunctioning parts of each new Peninsular Marine Engine . . . used in a marine pleasure boat, manufactured or supplied by Peninsular Engines, Inc. in accordance with the following schedule ... [12 months or 2,000 hours] . . . The warranty period shall begin on the date the Engine is delivered to the first retail purchaser who is the ultimate user and owner. This warranty covers only malfunctions resulting from defects in material or workmanship.
The Peninsular limited warranty further states:
THIS WARRANTY IS THE ONLYEXPRESS WARRANTY APPLICABLE TO PENINSULAR MARINE ENGINES. THE DURATION OF ANY IMPLIED WARRANTIES SHALL NOT EXTEND BEYOND THE DURATION OF THIS WARRANTY. ANY IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES ON MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY LIABILITY FOR LOSSES BASED ON NEGLIGENCE OR STRICT LIABILITY, ARE THEREAFTER DISCLAIMED. PENINSULAR ENGINES, INC. DOES NOT AUTHORIZE ANY PERSON TO CREATE FOR IT ANY OTHER OBLIGATION OR LIABILITY IN CONNECTION WITH THESE ENGINES. PENINSULAR ENGINES, INC. SHALL NOT BE LIABLE FOR CONSEQUENTIAL DAMAGES RESULTING FROM BREACH OF WARRANTY.
The purchaser acknowledges receipt of this warranty prior to the sale of the Peninsular Marine Engine and agrees to all of the terms and conditions in this warranty and acknowledges that the purchase has not been induced by any statements or representa *400 tions, oral or otherwise, in any way inconsistent from the terms and conditions of this warranty.
Albin manufactured the boat. Hansen, as an independent distributor for Peninsular engines, sold the Peninsular engines to Albin. Albin, in turn, installed the Peninsular engines in Sosik’s boat. Sosik docked the Albin at the York Harbor Marina, in York Harbor, Maine. York Harbor Marine Services (“YHMS”), which is owned and operated by Frederick J. Muehl, is the local boat servicing company. Before Sosik took possession of the boat, the oil pump on the starboard engine, the port engine, and the cell phone had to be replaced. Peninsular replaced the port engine at no charge to Sosik.
After taking possession of the boat, more problems with the engines arose, as well as electrical problems. The electronic difficulties affected the windshield wipers, the bilge pump, the starboard rudder control, and controlling the speed of the vessel. Sosik contacted Nauset’s Service Manager Ron Deschamps (“Deschamps”) to sort out these various problems. In response, Nauset sent out a crew on August 13, 1998, to remedy these problems. From August 1998 to September 2000, however, Sosik continued to experience difficulties with the electrical system. Throughout this time, Sosik communicated with Deschamps, via the telephone or by facsimile transmission, about the maltunctioning parts of his new Albin. On October 19, 1998, Deschamps requested Sosik to bring the boat to Nauset’s facility in order that it make the necessary repairs. Via a facsimile dated January 27, 1999, Sosik refused Deschamps’ request because he did not want to bear the transporting and storing expenses involved with transporting the boat from Maine to a Nauset facility in Massachusetts.
When Sosik began experiencing difficulties with the Peninsular engines, he contacted Hansen, Peninsular’s warranty agent, to remedy the problems. Muehl from YHMS also communicated directly with Hansen and Peninsular about the engine problems and performed the necessary repairs to Sosik’s boat. Sosik informed Hansen of the difficulty he had with starting the starboard engine and Hansen sent out a mechanic to ameliorate the problem. In June 1998, Hansen replaced both starters on the Peninsular engines, and, in July 1998, it fixed an oil leak on the port side engine. In August 1998, and then again in October 1998, Hansen replaced a defective glow plug relay on the starboard engine. Hansen also responded to problems Sosik was experiencing with the engine’s pre-heaters, replaced a malfunctioning fuel injector pump in May 1999, and responded to each of Sosik’s complaints about problems with hard starting. In June 1999, Sosik complained to Hansen about smoke emanating from the starboard engine, which Hansen temporarily fixed. This particular problem, however, recurred in June or July of the next year, after the expiration of Peninsular’s one-year limited warranty. Yet, Peninsular continued to address the problems that Sosik experienced with the Peninsular engines. For example, in July 1999 Peninsular sent Sosik a set of glow plugs and pre-heaters; and, in October 1999, Sosik spoke with John Payne of Hansen about the smoke problem, and Payne installed parts to correct the problem.
Then, in June 2000, the starboard engine failed. Peninsular replaced the failed engine, charging Sosik $5,300 for the new engine. On September 15, 2000, however, Peninsular refunded part of that cost by sending Sosik a check in the amount of $3,000. Sosik alleges that in September 2000, the port engine failed. Upon learning of the port engine’s failure, on September 28, 2000, Peninsular President Matthew Koning wrote to Sosik and offered to replace the engine. Sosik instead chose to replace both Peninsular engines for a cost of approximately $63,000. He now claims damages for, among other things, the replacement engines and lost charter tours.

DISCUSSION

I. Standard of Review
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving pariy bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14 (1989). If the party moving for summary judgment does not bear the burden of proof at trial, he can demonstrate the absence of a triable issue by submitting affirmative evidence negating an essential element of the nonmov-ing party’s case, or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Kow-ouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1990). The court should deny a motion for summary judgment when the nonmoving party presents evidence of genuine issues of material fact entitling him to a trial. Community Nat’l Bank v. Dawes, 369 Mass. 550, 556 (1976). Vague or general allegations of expected proof or mere assertions or inferences made by the opposing party are insufficient to defeat a motion for summary judgment. First Nat’l Bank of Boston v. Slade, 379 Mass. 243, 246 (1979).
II. Defendants’ Motion for Summary Judgment
A. Breach of Contract (Count I) and Express Warranty (Count II)
1. Nauset
Sosik contends that Nauset created express warranties when Ayles promised to provide him with service in Maine and represented that Peninsular engines were a good fit for Sosik’s charter fishing boat. G.L.c. 106, §2-313 provides that;
(1) Express warranties by the seller are created as follows;
(a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an *401 express warranty that the goods shall conform to the affirmation or promise.
(b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
Sosik maintains that Nauset’s agreement to provide service in Maine was a “key reason” he entered into the contract, and was a promise that related to the boat and was a basis of the contract. Sosik also maintains that Ayles’ description of Peninsular engines as suitable for Sosik’s commercial use of his boat became part of the basis of the bargain, and, therefore, Ayles created an express warranty that the engines would conform to that particular use. For the purposes of deciding this motion only, and viewing the facts in the light most favorable to Sosik, this Court finds that Nauset created express warranties that service for Sosik’s boat was available in Maine and that the Peninsular engines were suitable for commercial use. Indeed, Nauset does not dispute the creation of an express warraniy, but rather argues that it properly disclaimed any express warranties.
G.L.c. 106, §2-316(1) provides that:
Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence negation or limitation is inoperative to the extent that such construction is unreasonable.
As explained in the Uniform Commercial Code Comment to this section:
This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude “all warranties, express or implied.” It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty . . .
Here, Nauset’s disclaimer of express warranties is inconsistent with its express warranty to service Sosik’s boat in Maine and its express warraniy that Peninsular engines were suitable for use in Sosik’s boat. Accordingly, Nauset’s motion for summary judgment on this claim is DENIED.
2. Peninsular
To establish a breach of contract case, Sosik must prove (1) the existence of an agreement, (2) for a valid consideration, (3) performance or its equivalent by the plaintiff and breach by the defendant, and (4) damage to the plaintiff. Singarella v. Boston, 342 Mass. 385, 387 (1961). The only agreement between Sosik and Peninsular was the limited warranty relating to the Peninsular engines. Sosik contends that Peninsular breached its limited warranty by failing to honor its obligations under the warranty.
The limited warranty states, in pertinent part, that Peninsular “warrants only to the first retail purchaser who is the ultimate user and owner that it will repair any defective or malfunctioning parts of each new Peninsular Marine Engine . . . used in a marine pleasure boat . . .” Peninsular maintains that, because the boat was used for commercial purposes, Sosik violated a term of the warranty, and, therefore, was not entitled to any services arising under the warranty. Alternatively, Peninsular claims that it did honor the limited warranty by continually servicing the engines, and that it sufficiently resolved the engine problems so that Sosik was not deprived of use of his boat. Sosik contests Peninsular’s characterization of the boat as commercial. He states that his use of the boat was indistinguishable from “pleasure use,” especially because he was denied use of the boat as often as he would have liked due to the extent of the engine problems.
“The interpretation of a contract is generally a question of law.” Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass.App.Ct. 726, 729 (1999). Unambiguous words in a contract must be construed in their ordinary and usual sense. Fried v. Fried, 5 Mass.App.Ct. 660, 663 (1977). The words “marine pleasure boat” are unambiguous. Construed in their ordinary and usual sense they mean a boat that is used for pleasure, le., personal use, not for commercial or business use. It is undisputed that Sosik used the boat in furtherance of his fish chartering service, an obvious business use.
However, Sosik’s “commercial use” of the boat does not negate the limited warranty to the extent that it promises that Peninsular provide a product suitable for “pleasure use.”[2] G.L.c. 106, §2-719(2) provides, “(wjhere circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.” As noted by the federal district court, in Hadar v. Concordia Yacht Builders, Inc., 886 F.Sup. 1082, 1099 (S.D.N.Y. 1995), in interpreting Massachusetts law, “ [a] remedy fails where ‘applying it would cause a buyer to receive less than what the contract calls for.’ ” “Whether a remedy has failed of its essential purpose is a question of fact.” Boston Helicopter Charter, Inc. v. Agusta Aviation Corporation, B.L. Jet, 767 F.Sup. 363, 373 (D.Mass. 1991) (“where a repair-or-replace remedy deprives the buyer of minimum adequate remedies, the warranty will be said to have failed of its essential purpose”). The essential purpose of Peninsular’s limited warranty was to provide a craft fit for pleasure use. Thus, at a minimum, Sosik was entitled to such a craft. Given the circumstances of this case, and the relatively few hours Sosik actually used the vessel, an issue of material fact exists as to whether Sosik was deprived of a craft suitable even for pleasure use as a result of the engine-related problems. Moreover, genuine issues of fact exist concerning whether Peninsular’s servicing of the boat sufficiently resolved the engine problems. Accordingly, Peninsular’s motion for sum- *402 maiy judgment on Sosik’s claim for breach of express warranty is DENIED.
B. Implied Warranty of Merchantability and Fitness for a Particular Purpose and Consequential Damages (Count III) 1. Nauset
G.L.c. 106, §2-316(2) provides:
[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.
Chapter 106, §2-316A, however, prohibits disclaimers of implied warranties on consumer goods. Consumer goods are goods “used or bought for use primarily for personal, family or household purposes.” G.L.c. 106, §9-102(23). As it is undisputed that Sosik purchased his boat primarily for use in his charter service company, the record does not support Sosik’s claim that his boat is a consumer good.
The next question is whether the disclaimers met the statutoiy requirements. Whether a term or clause is conspicuous is a question of law. G.L.c. 106, §1-201(10). Section 1-201 defines “conspicuous” as a term or clause written in a manner so as a reasonable person against whom the disclaimer is to operate should have noticed it. Id. “Factors to be considered in evaluating . . . conspicuousness . . . are the size of the type, the location of the disclaimer clause, capitalization of the relevant language and the sophistication of the contracting parties.” Boston Helicopter Charter, Inc., 767 F.Sup. at 376. Nauset’s disclaimer mentions merchantability and is typed prominently in capital letters, making it stand out among the rest of the limited warranty. Therefore, the disclaimer is conspicuous within the meaning of §2-316.
However, if the court, as a matter of law, finds the disclaimer unconscionable at the time it was made, the disclaimer will be unenforceable. G.L.c. 106, §2-302. In order to find a provision unconscionable, the court must find oppression or unfair surprise. Penney v. First Nat. Bank of Boston, 385 Mass. 715 (1982).
In determining whether a practice is unfair or oppressive, the court may take into account a myriad of factors, such as the commercial sophistication of the party claiming unconsdonability; whether such party was represented by counsel; whether the clause was obscure or buried in fine print, or conversely, whether it was out on the table and the subject of active negotiation; the frequency with which clauses of the type challenged are used in analogous situations; whether the relationship between the parties was arms length or quasi-fiduciaiy; . . . and whether the party seeking to enforce the challenged provision took unfair advantage of the other party’s weakness, vulnerability, or dependency, or used unfair or improper means to place the other party in such position.
Nasco, Inc. v. Public Storage, Inc., 1995 WL 337072, at *5 (D.Mass. 1995). “[UJnconscionability must be determined on a case by case basis . . . giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party.” Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292 (1980). The Zapatha court found no unfair surprise to the plaintiffs in a provision allowing termination of an agreement without cause where it was “neither obscurely worded, nor buried in fine print in the contract,” the plaintiffs had more than enough time to look over the agreement before they signed it, and the plaintiff had a significant background in business, id. at 293-94.
Sosik claims that he was unfairly surprised when he learned that neither the boat nor the engines were covered under warranty when used for commercial purposes. There is evidence in the summary judgment record to support this claim. First, Nauset had particular knowledge of Sosik’s planned commercial use of the boat,[3] and, in fact, sold him the boat knowing that its warranty would not cover such use. Nauset failed to mention this important limitation to Sosik.
Next, Nauset’s failure to mention this particular warranty exclusion is compounded by the fact that Nauset and Sosik are not of equal commercial sophistication. Nauset is a large, experienced boat retailer. Sosik, on the other hand, is a relatively inexperienced individual, particularly in the area of purchasing boats to be used commercially. Boston Helicopter Charter, Inc., 767 F.Sup. at 375 (“the doctrine of unconscionabiliiy is not typically applied to commercial dealings between business entities, but has been invoked more often in consumer transactions”); PC Com, Inc., v. Proteon, Inc., 946 F.Sup. 1125, 1138 (S.D.N.Y. 1996) (court held that liability-limiting clause was not unconscionable as a matter of law because both parties were “sophisticated business entities”); Colonial Life Ins. Co. of America v. Electronic Data Systems Corp., 817 F.Sup. 235, 243 (D.N.H. 1993) (court held as a matter of law that provision was not unconscionable where both parties were sophisticated business entities and had extensively negotiated the provision in dispute). Whatever experience Sosik may have derived from a failed construction company and a credit card processing company does not provide him with any special level of sophistication regarding the purchasing of a boat, especially given that this was the first time Sosik had purchased a new boat and was also the largest purchase he had made to date. Furthermore, if Nauset and Sosik had been acting at arm’s length, Nauset certainly would have made it known to Sosik that his planned use of the boat was not covered under warranty. Rather, Sosik received Nauset’s warranty six months after he purchased the boat. The particular provision in the warranty which disclaimed coverage for commercial use *403 was located in a laundry list of exclusions, namely paragraph seven of thirteen such paragraphs typed in a small font. Moreover, the exclusion for commercial use was surrounded by eight other prohibited uses, making this exclusion particularly inconspicuous.
In the context of this case, this Court finds the disclaimer unconscionable because Nauset employed unfair means in disclaiming the warranty protection. Accordingly, Nauset’s motion for summary judgment on Sosik’s claim for breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose is DENIED.
2. Peninsular
Sosik also contends that Peninsular breached its implied warranties. Peninsular argues that its implied warranties were restricted to the duration of the limited warranty and that the warranty properly excluded consequential damages. Sosiks claims that Peninsular is estopped from arguing the'expiration of the limited warranty. In order to establish estoppel, Sosik must demonstrate that Peninsular “made representations they knew or should have known would induce the plaintiff to put off bringing an action and that the plaintiff did in fact delay taking action in reliance of the representations.” White v. Peabody Const. Co., Inc., 386 Mass. 121, 134 (1982).
Sosik maintains that Peninsular represented to him that it would continue to work on the problems with the engines and that it would file an application to extend the warranty period. Sosik argues that together these actions “lulled” him into putting off any actions under the warranty. According to the summaiy judgment record, Sosik was aware of the one-year limited warranty period because he requested an extension of the warranty period. The record also demonstrates that Sosik never received any sort of affirmation that the warranty period would be extended. There is no evidence to suggest that Peninsular made these representations to induce Sosik to forego bringing an action on the warranty. Sosik received and signed the limited warranty from Peninsular on May 9, 1998. Peninsular’s disclaimer mentions merchantability and is typed prominently in capital letters, causing it to stand out among the rest of the limited warranty. Therefore, this Court finds Peninsular’s disclaimer conspicuous, and thus effective, within the meaning of §2-316.
G.L.c. 106, §2-719(3) expressly allows for the limitation of consequential damages, provided that such limitation is not unconscionable. As discussed above, in order to find a provision unconscionable, the court must find oppression or unfair surprise, and this Court finds no element of either in the instant matter. The inquiry does not end here, however, as the Court must yet determine whether an issue of material fact exists concerning whether Peninsular breached its implied warranties to Sosik within the warranty period.
a. Implied Warranty: Merchantability
G.L.c. 106, §2-314 provides:
(1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . .
(2) Goods to be merchantable must at least be such as . . .
(c) are fit for the ordinaiy purposes for which such goods are used . . .
Viewing the facts in the light most favorable to Sosik, the Court finds that a fact finder could reasonably determine that Peninsular breached its implied warranty of merchantability. Although Peninsular made efforts to repair the engines, there exists a question of fact as to whether such repairs were sufficient so as to render them of merchantable quality for pleasure boat use. Hunt v. Perkins Machinery Co., Inc., 352 Mass. 535, 541 (1967) (finding breach of implied warranty of merchantability where plaintiff purchased a boat engine from defendant manufacturer which gave off excessive amounts of smoke and defendant could not remedy the problem after many efforts). Accordingly, Peninsular’s motion for sum-maiy judgment on Sosik’s claim for breach of implied warranty of merchantability is DENIED.
b. Implied Warranty: Fitness for Particular Purpose
G.L.c. 106, §2-315 provides further that:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller’s skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such a purpose.
Peninsular contends that this issue is ripe for summary judgment because it did not have a relationship with Sosik and did not know of Sosik’s particular purpose until after the boat was delivered to him. Section 2-318 provides that “(l]ack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer ... of goods to recover damages for breach of warranty, express or implied ... if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use ... the goods.” This section only applies, however, for personal injury and property damage resulting from a breach of warranty. Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 104 (1989); Jacobs v. Yamaha Motor Corp., U.S.A., 420 Mass. 323, 330 (1995). Sosik does not dispute that he is only seeking economic damages. Therefore, §2-318 does not apply. Accordingly, because there is a lack of privity between Sosik and Peninsular, Peninsular’s motion for summary judgment on Sosik’s claim for breach of implied warranty of fitness for a particular purpose is ALLOWED.

*404
C.Products Liability (Count VI)

Both Nauset and Peninsular move for summary judgment on Sosik’s products liability claim. The economic loss rule bars recovery in actions of negligence or strict liability when the damages are only economic in nature. Bay State-Spray, 404 Mass. at 107. As noted above, Sosik claims only economic damages. “Economic loss ... includes] ‘damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property ...’’’ Marcil v. John Deere Industrial Equipment Co., 9 Mass.App.Ct. 625, 630 n.3 (1980). Economic loss also includes damages to the product itself. Id. Therefore, Sosik is barred from claiming property damages to his boat as a result of the starboard engine failing. Accordingly, the defendants’ motions for summary judgment on this claim is ALLOWED.

D.Fraud or Deceit (Count V)

To recover in tort in an action of deceit the plaintiff must show that “the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.” Damon v. Sun Co., Inc., 87 F.3d 1467, 1472 (1st Cir. 1996) (applying Massachusetts law); Barrett Associates, Inc. v. Aronson, 346 Mass. 150, 12 (1963).
1. Nauset
Sosik claims that because Nauset had prior dealings with Peninsular, it should have known that Peninsular engines were excluded from warranty protection when used for commercial activities. He maintains that despite knowledge of Sosik’s planned commercial use, Nauset encouraged him to purchase a Peninsular engine when it should have known the engine would not be protected under warranty. Sosik also maintains that Nauset misrepresented that it would service his boat in Maine in order to induce Sosik to purchase the boat and that he relied on this misrepresentation to his detriment.
Viewing the evidence in the light most favorable to Sosik, this Court finds that genuine issues of fact exists as to whether Nauset falsely represented to Sosik that the Peninsular engines were suitable for Sosik’s boat, and as to whether service was made available in Maine. Accordingly, Nauset’s motion for summary judgment on this claim is DENIED.
2. Peninsular
The summary judgment records contains no evidence tending to establish that Peninsular made any representations to Sosik. Accordingly, Peninsular’s motion for summary judgment is ALLOWED.

E.Chapter 93A (Count IV)

1. Nauset

Chapter 93A provides a remedy for a business person who suffers financial or property loss due to use of an unfair method of competition or an unfair or deceptive practice by another business person. The court must consider “(1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers ...” PMP Assocs., Inc., v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
Sosik claims that Nauset violated chapter 93A by failing to provide him with a merchantable boat and merchantable engines and by misrepresenting to Sosik that the Peninsular engines were suitable for his boat and that it would service his boat in Maine. Sosik’s 93A claim closely resembles his breach of warranty claims. Generally, a breach of warranty constitutes a violation of c. 93A, §2. Maillet v. ATF-Davidson Co., 407 Mass. 185, 193 (1990) (citations omitted). Accordingly, Nauset’s motion for summary judgment on this claim is DENIED.
2. Peninsular
In certain cases where a party’s 93A claim is essentially a replication of his breach of warranty claims, a clause excluding consequential damages may bar the 93A claim. Boston Helicopter Charter Inc., 767 F.Sup. at 377; Logan Equipment Corp., 736 F.Sup. 1188, 1204 (1990) (applying Massachusetts law); Canal Electric Co. v. Westinghouse Electric Corp., 406 Mass. 369, 378-79 (1990). Having already determined that the limited warranty between Sosik and Peninsular properly excluded consequential damages, and because Sosik’s 93A claim “arises from the breach of warranty and merely is an alternate theory of recovery under the contract,” Canal Electric Co., Mass. at 379, Peninsular’s motion for summary judgment on this claim is ALLOWED.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendant Nauset’s motion for summary judgment is DENIED as to Counts I, II, III, IV, and V and ALLOWED as to Count VI. It is further ORDERED that defendant Peninsular’s motion for summary judgment is DENIED as to Counts I and II; DENIED in part and ALLOWED in part as to Count III; and ALLOWED as to Counts IV, V, and VI.

Although Sosik used his boat for commercial purposes, he argues that Peninsular waived this requirement because it had notice that Sosik was using his boat for these purposes and nonetheless continued to service the engines pursuant to the limited warranty. This Court need not address this issue of waiver because a question of fact exists as to whether the limited warranty failed of its essential purpose, and, therefore, deprived Sosik of a merchantable product.

The recipient of the warranty registration card was identified as Northeast Charter Services, Inc. Furthermore, viewing the facts in the light most favorable to Sosik, Ayles was aware that Sosik planned to use the boat for his charter service company.